UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRANDON QUINCY THOMPSON<br>a/k/a Terence Maceo Clay, Jr.,<br>a/k/a "Kadafi," a/k/a Hanee Rashid King, a/k/a Hanee Rasid King,<br><br>Defendant. | 4:09-CR-40129-01-KES<br><br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Brandon Quincy Thompson, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 156. Plaintiff, the United States of America, opposes the motion. Docket 159. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On May 8, 2019, Thompson pleaded guilty to count 12 and count 19 of the second superseding indictment. Docket 83, 88. Count 12 alleged sex trafficking of a minor by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a)(l), 159l(a)(2), 1591(b)(l), 1591(b)(2), and 2(a) and 2(b). Docket 72. Count 19 alleged solicitation to murder a federal witness in violation of 18 U.S.C. §§ 373 and 1512(a)(l). *Id.* On April 15, 2011, the court sentenced Thompson to life in custody on count 12 and a consecutive 120 months in custody on count 19. Docket 121 at 4; Docket 123 at 2.

Thompson is currently incarcerated at the United States Penitentiary Terre Haute (USP Terre Haute), a high security penitentiary, in Terre Haute,

Indiana. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last checked Mar. 9, 2021). The total population at USP Terre Haute is currently 1,187 persons. https://www.bop.gov/ locations/thp/ (last visited Mar. 9, 2021). As of March 9, 2021, there are currently seven active COVID-19 cases among inmates at USP Terre Haute and two among staff. *BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Mar. 9, 2021). There have been two inmate deaths from COVID-19, and 728 inmates and 18 staff have recovered as of March 9, 2021 at USP Terre Haute. *Id.*

Thompson claims he is more vulnerable to COVID-19 because he suffers from hypertension, anxiety, depression, obesity, nerve damage, glaucoma, and is a "heavy tobacco user." Docket 156 at 3. Thompson is currently 37 years old. *See* https://www.bop.gov/inmateloc. Thompson asserts his grandparents and father are currently battling cancer, and states he intends to be their caretaker if released. Docket 156 at 1, 18; Docket 160 at 3.

On May 25, 2020, Thompson completed a Request for Administrative Remedy form, requesting to be considered for compassionate release due to COVID-19. Docket 156-1 at 5-13. On May 28, 2020, the administrative remedy coordinator denied Thompson's request. *Id.* at 4. On December 14, 2020, Thompson filed a pro se motion with the court for relief under the First Step Act. Docket 156.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.

§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant must not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Thompson argues that the global COVID-19 crisis, his health conditions, and his relatives' medical conditions and their need for a caregiver satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 156 at 1; Docket 156-1 at 11; Docket 160 at 3. Thompson requests a sentence of time served. Docket 156.

**I.      Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of

the FSA, however, Congress now permits courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court concludes Thompson has exhausted the administrative remedies and reviews the matter on the merits.

## II.  Extraordinary and Compelling Reasons

Though § 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). The Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id.* The Sentencing Commission did so by limiting "extraordinary and compelling" reasons to four categories. USSG § 1B1.13, cmt. n.1(A)-(C). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, cmt. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending § 3582(c)(1)(A), and has not been updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, a number of district courts, including this one, have questioned whether the previous policy statement still applies. *See United States v. Rodd*, Criminal No. 13-230, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020); *United States v. Poole*, 4:15-CR-40099-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Beck*, 425 F. Supp. 3d at 578-80; *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). A fellow court in this district has held that the "court retains its independent authority to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring[.]" (internal quotations omitted). This uncertainty has not yet been

5

addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

The statute instructs that the court may reduce a term of imprisonment for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, comment notes 1(A)-(D) to guide its analysis. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* (8th Cir. Oct. 9, 2020); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

Thompson contends that his medical conditions put him at high-risk of severe illness if he contracts COVID-19, and argues this combined with his relatives' serious health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 156 at 1; Docket 156-1 at 11; Docket 160 at 3. The court analyzes Thompson's claims under the medical conditions category, USSG § 1B1.13 comment note 1(A), the family circumstances category, USSG § 1B1.13 comment note 1(C), and the catch-all

6

provision, USSG § 1B1.13 comment note 1(D).

Assuming the policy statements continue to apply to compassionate release motions brought under the FSA, Thompson has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.     Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased risk of severe illness from COVID-19, including cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (a BMI of 30 or higher), type 2 diabetes, and several others. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 22, 2021). The CDC advises that other medical conditions *might* pose an increased risk of severe illness from COVID-19, including moderate to severe asthma, hypertension or high blood pressure, liver disease, type 1 diabetes, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Thompson's medical conditions include hypertension, possibly resolved, joint derangement in his right elbow, and a leg injury. Docket 158 at 23-24. Thompson's hypertension is a condition that *might* increase the risk of severe illness from COVID-19 if he were to contract the virus. Thompson's other

7

medical conditions—right elbow joint derangement and leg injury—are not among those identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19.

The records reveal Thompson has a history of hypertension. Docket 158 at 183, 255, 262, 333, 399, 406, 440, 532. Currently, his hypertension is categorized as controlled without the usage of medication. *Id.* at 1, 448, 532, 534. The BOP medical staff consider Thompson's hypertension "resolved." *Id.* at 566. Thus, this condition is not, in fact, a risk factor for him. Thompson also claims to be obese, but based on his height (68 inches) and weight (180 pounds), his BMI is 27.4 which is considered overweight, not obese. Docket 158 at 1, 76; *See also Adult BMI Calculator,* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Mar. 9, 2021). This court requires a more particularized showing of risk than being overweight and having a resolved medical condition that *might* increase the risk of severe illness due to COVID-19.

Recently, the Bureau of Prisons has implemented a COVID-19 vaccination plan and has begun administering vaccines to inmates and staff. *See BOP: COVID-19 Update,* https://www.bop.gov/coronavirus/ (last visited Mar. 9, 2021). As of March 9, 2021, 72,466 doses have been administered systemwide. *Id.* At the Terre Haute correctional complex, 209 staff and 349 inmates have been fully inoculated as of March 9, 2021. *Learn More About Vaccinations and View Individual Facility Stats,* https://www.bop.gov/coronavirus/ (last visited Mar. 9, 2021). According to the BOP, those inmates

who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

*Id.*

The court concludes Thompson's health concerns coupled with the present conditions at USP Terre Haute do not establish "extraordinary and compelling reasons" for his early release. The court believes Thompson's medical conditions can be appropriately managed at USP Terre Haute, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. That USP Terre Haute has had COVID-19 infiltrate the facility does not negate such conclusions. On balance, the court is persuaded USP Terre Haute has acted appropriately to treat inmates who contract COVID-19.

### B.   Family Circumstances Category, Note 1(C)

To justify compassionate release under the family circumstances category, USSG § 1B1.13 comment note 1(C), the defendant must demonstrate one of the following: (1) the "death or incapacitation of the caregiver of the defendant's minor children" or (2) the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Thompson advises the court that his father and grandparents suffer from cancer. Docket 156 at 1; Docket 160 at 3. There is no evidence in the record to substantiate his claims of their deteriorating health. Even if the court were to consider that Thompson's

9

relatives may be incapacitated for purposes of Note (1)(C), the family circumstances category specifically references care needed for a spouse or minor children. *See* USSG § 1B1.13, cmt. n.1(C). Though the court is not unsympathetic, Thompson does not qualify for release under the family circumstances category.

### C. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are "extraordinary and compelling" reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Thompson's medical conditions together with his relatives' need for care does not convince the court that "extraordinary and compelling" reasons exists to release Thompson from custody early.

## III. Sentencing Factors of § 31583(a)

Although the court need not consider the 3553(a) factors because Thompson's circumstances fail to meet the high bar of "extraordinary and compelling" reasons warranting a sentence reduction, such sentencing factors underscore the point.

Thompson was convicted of two very serious offenses, sex trafficking of a child by force, fraud, or coercion and solicitation to murder a federal witness. Ten minor victims were identified to have been manipulated and coerced to engage in sexual acts. PSR ¶ 10. The victims' ages ranged from 14 to 17 years old. *Id.* Thompson began recruiting young women in 2007 and continued until

the time of his arrest. *Id.* ¶¶ 18-60. Thompson utilized the internet and actively pursued the recruitment of these victims. *Id.* ¶¶ 18-20, 24, 28, 30-31, 37, 38, 49. Thompson required his victims to change their names and forced them to lie about their ages to his clients. *Id.* ¶ 19. While detained, Thompson attempted to hire his cellmate to murder any victims planning to testify against him. *Id.* ¶¶ 61-64.

The total offense level on both counts was calculated as 60 but was later adjusted to an offense level of 43, pursuant to Chapter 5, Part A. *Id.* ¶ 211. Thompson had 21 scorable criminal history points resulting in a criminal history Category VI. *Id.* ¶¶ 241-43. The sex trafficking offense had a mandatory minimum of 15 years in custody and a maximum term of imprisonment of life. *Id.* ¶ 295. The advisory guideline range for Thompson's sex trafficking offense was life. *Id.* ¶ 296. The court sentenced Thompson to life in custody for count 12 and 120 months in custody for count 19 to be served consecutively. Docket 123 at 2. Thompson's current sentence is within the guideline range and reflects the cruel, destructive, and devastating nature of his offenses.

The court's sentencing decisions were made with care, considering Thompson's offenses, history and characteristics, and all the other applicable sentencing factors. The court concludes Thompson's sentence of life in custody followed by 120 months incarceration continues to be appropriate for the seriousness of the crimes to which he pleaded guilty.

## CONCLUSION

Thompson has failed to satisfy the extraordinary and compelling reason

standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 156) is denied.

Dated March 10, 2021.

                                      BY THE COURT:

                                      */s/ Karen E. Schreier*
                                      KAREN E. SCHREIER
                                      UNITED STATES DISTRICT JUDGE